UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/04/2026

GOLDEN KRUST CARIBBEAN BAKERY, INC.,
et al,

                          Plaintiffs,

   -against-

ZEHRA SHERIFF,

                          Defendant.

No. 25-cv-00713 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiffs Golden Krust Caribbean Bakery Inc. and Golden Krust Franchising, Inc. (collectively, the "Plaintiffs") bring this action against Defendant Zehra Sheriff ("Defendant"), seeking a declaratory judgment that Defendant's employment agreement—which contains an arbitration provision—is void *ab initio* because Plaintiffs' Board of Directors (the "Board") never passed a resolution approving it. Presently before the Court is Plaintiffs' motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, where Plaintiffs argue that Defendant waived her arbitral rights because her counterclaims are inconsistent with arbitration. (ECF No. 26.)

For the following reasons, Plaintiffs' motion for partial summary judgment is DENIED.

## FACTUAL BACKGROUND

Plaintiffs and Defendant submitted briefs, statements of material facts pursuant to Local Rule 56.1, responses to the opposing statements of material facts, and the record and exhibits from discovery in the instant proceeding, which reflect the following factual background.

Defendant Zehra Sheriff began employment with Plaintiffs Golden Krust Caribbean Bakery Inc. and Golden Krust Franchising, Inc. in or about September 2022 as Vice President of

Finance.  (Gedan Decl., Ex. 3, "Sheriff Decl.," ¶ 3.)  Following the resignation of Plaintiffs' former Chief Executive Officer ("CEO"), Defendant was promoted to Interim CEO on July 7, 2023. (Gedan Decl., Ex. 4.)  Beginning on October 12, 2023, Defendant entered into negotiations with Plaintiffs' Human Resources Department and Mr. Robert Pritchard, then-Chairman of the Board, regarding an employment agreement for Defendant to become CEO.  (Sheriff Decl., ¶¶ 8, 11–16.) Defendant signed an employment agreement on November 22, 2023, which was countersigned by Mr. Pritchard on November 24, 2023.  (*Id*. ¶¶ 16, 18.)  Although executed in November 2023, the employment agreement was backdated to September 7, 2023.  (*Id*. ¶¶ 17–18.)  Plaintiffs assert, however, that the Board never authorized Mr. Pritchard to execute an employment agreement with Defendant, nor did the Board pass a resolution appointing Defendant as CEO.  (Gedan Decl., Ex. 1, ¶¶ 31–48.)

Defendant's employment agreement provides, among other things, that she would be entitled to severance if (1) she resigned with "good reason," or (2) there was a change in the Board's leadership.  (Gedan Decl., Ex. 5 § 4(B).)  The employment agreement defines "good reason" to include, among other things, a change in the Board's leadership.  (*Id*. § 4(D).)   The employment agreement also includes an arbitration provision stating that "[t]he parties agree to submit all disputes arising out of or under this agreement to binding arbitration administered by the American Arbitration Association (the "AAA") and shall be resolved by arbitration and in accordance with the Employment Arbitration Rules of the AAA."  (*Id*. ¶ §10(R)(1).)

In approximately June 2024, Mr. Pritchard was voted out as Chairman of the Board. (Sheriff Decl., ¶ 31.)  Defendant subsequently emailed a notice of separation to the Board on June 20, 2024.  (Gedan Decl., Ex. 6; Lenane-Massey Decl., Ex. A ¶ 62, Ex. C ¶ 32.)  In her notice,

Defendant informed the Board that her "separation rights" were "triggered" by Mr. Pritchard's removal. (Gedan Decl., Ex. 6.)

To ensure an "orderly transition," the parties engaged in settlement discussions but ultimately reached an impasse. (Sheriff Decl., ¶¶ 38–40.) Defendant then initiated an arbitration proceeding before the AAA on October 29, 2024. (Gedan Decl., Ex. 7.) Defendant asserted a single cause of action for breach of contract, claiming that Plaintiffs must pay her the "full severance amount—a total of no less than $437,286.86"—pursuant to her employment agreement. (*Id*. ¶¶ 4, 47–52.) To support her argument, Defendant alleged that her "termination" was "triggered" when Mr. Pritchard was voted out as Chairman of the Board. (*Id*. ¶¶ 29, 31.) Defendant also alleged that Plaintiffs' newly appointed Chairperson of the Board, Jacqueline Hawthorne-Robinson, informed Defendant that she would transition out of her position as CEO on July 9, 2024. (*Id*. ¶ 33.)

Amid the arbitration, Plaintiffs commenced this action on January 24, 2025, seeking a declaratory judgment that Defendant's employment agreement—and the arbitration provision contained therein—is void *ab initio*, and requesting an injunction to stay the underlying arbitration, on the ground that the Board never voted to approve the employment agreement. (Gedan Decl., Ex. 1, ¶¶ 31–48.) On February 10, 2025, Plaintiffs filed a motion for a Temporary Restraining Order and Preliminary Injunction seeking to stay the underlying arbitration pending the resolution of this action. (ECF No. 9.) The Court conducted a show cause hearing on February 12, 2025, and granted Plaintiffs' motion on February 19, 2025. (ECF No. 19.)

Shortly thereafter, Defendant filed an Answer to the Complaint on March 6, 2025, asserting the following counterclaims: (1) breach of contract; (2) promissory estoppel; (3) unjust enrichment; (4) *quantum meruit*; and (5) breach of the covenant of good faith and fair dealing.

(*See generally* Gedan Decl., Ex. 2.)  Defendant's breach of contract counterclaim mirrors the claim she asserted in her arbitration statement.  (*Compare* Gedan Decl., Ex. 2, ¶¶ 60, 62 *with* Gedan Decl., Ex. 7, ¶¶ 29, 31.)  Defendant asserts the three quasi-contract claims—promissory estoppel, unjust enrichment, and *quantum meruit*—in the event the Court determines that the employment agreement is invalid or unenforceable. (Gedan Decl., Ex. 2, ¶¶ 87, 95, 101.)  Defendant, however, does not make such representations for her breach of the covenant of good faith and fair dealing counterclaim.  (*Id*. ¶¶ 107–112.)  Defendant further alleges that each counterclaim is pled "to ensure the preservation of her claims… without waiving her right to bring the same claims in arbitration and, in fact, expressly reserving her right to do so."  (*Id*. ¶ 9.)  Each counterclaim also seeks to recover "damages to the greatest extent permitted by law."  (*Id*. ¶¶ 84, 92, 98, 106, 112.)

## PROCEDURAL HISTORY

On July 25, 2025, Plaintiffs moved for partial summary judgment and submitted a memorandum of law in support of the motion and Rule 56.1 statement of undisputed material facts. (ECF Nos. 26–30.)  Defendant opposed the motion and submitted a counterstatement to Plaintiffs' Rule 56.1 statement of undisputed material facts.  (ECF Nos. 34–36.)  Plaintiffs filed a reply memorandum in further support of their motion and a reply Rule 56.1 statement.  (ECF Nos. 31–33.)  Considering new, relevant Second Circuit case law issued after Defendant filed her opposition papers, Defendant sought leave to file a sur-reply.  (ECF No. 37.)  The Court permitted Defendant to file a sur-reply and Plaintiffs to file a sur-sur-reply.  (ECF No. 39.)  Defendant filed her sur-reply on September 16, 2025, (ECF No. 40), and Plaintiffs filed their sur-sur-reply on September 19, 2025, (ECF No. 41).

## LEGAL STANDARD

4

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, inclusive of deposition testimony, documents, affidavits, and declarations, *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing… that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus then shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must "draw all rational inferences in the non-movant's favor" while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson*, 477 U.S. at 248). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (noting that "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment"). Rather, in answering the primary inquiry of "whether there is the need for a trial," the court must determine "whether a fair-minded jury *could* return a verdict for the plaintiff [or non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 250, 252. Summary judgment

5

should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## DISCUSSION

Plaintiffs move for partial summary judgment on the basis that Defendant's counterclaims are inconsistent with her right to arbitrate. (ECF No. 28, "Pls.' Mem.," at 13.) To support their claim, Plaintiffs rely on the United States Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), and the Second Circuit's application of that decision in *Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122 (2d Cir. 2025). (ECF No. 32, "Pls.' Reply," at 4.) Because resolution of this motion turns on the application of these two cases, the Court begins its analysis by reviewing the principles governing waiver of the right to arbitrate as articulated in those decisions.

## I. Standard for Finding Waiver of Arbitration Prior to *Morgan*

Before the Supreme Court's decision in *Morgan*, the Second Circuit derived a three-factor test to determine whether a party had waived its right to arbitration under the Federal Arbitration Act ("FAA"): "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Doyle*, 144 F.4th at 126 (citing *La. Stadium & Expo. Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010)). Rather than creating a "rigid formula or bright-line rule for identifying when a party has waived its right to arbitration," the Second Circuit applied these factors "to the specific context of each particular case." *La. Stadium & Expo. Dist.*, 626 F.3d at 159. But Second Circuit caselaw was clear that "proof of prejudice" was not simply one among several factors to be considered. Instead, under pre-*Morgan* precedent, proof of prejudice was a mandatory precondition to the finding of waiver. Indeed, "[t]he key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in

6

litigation may be found only when prejudice to the other party is demonstrated." *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105 (2d Cir. 2002) (per curiam).

The Second Circuit's standard, and its reliance on prejudice, was "anchored in a belief that agreements to arbitrate are special—that they are to be treated differently than other agreements." *Doyle*, 144 F.4th at 126.  To this end, "waiver [was] not to be lightly inferred, and mere delay in seeking a stay of the proceedings without some resultant prejudice to a party cannot carry the day." *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457, 461 (2d Cir. 1985).  While other Second Circuit decisions incorporated the other two factors of time elapsed and amount of litigation activity in their analyses, the prejudice requirement was the dominant focus of the waiver inquiry for decades.  *See Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968).  The reliance on prejudice was neither unique to the Second Circuit; more than half of all Courts of Appeals adopted this standard and the special treatment afforded to agreements to arbitrate, including the absolute requirement of prejudice to find waiver of the right to compel arbitration.[1] This precedent, however, was abrogated by the Supreme Court's decision in *Morgan*.

## II.    The Supreme Court's Decision in *Morgan*

In *Morgan*, the Supreme Court reviewed a case challenging the Eighth Circuit's then-existing rule that "a party waives its contractual right to arbitration if it knew of the right; acted inconsistently with that right; and—critical here—prejudiced the other party by its inconsistent actions."  596 U.S. at 415.  There, the Eighth Circuit had "sent Morgan's case to arbitration" because it did not find "the prejudice requirement satisfied."  *Id*.  The Eighth Circuit did so in

---

[1] For instance, the Third, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits had long followed the Second Circuit's reasoning in *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968).  *See, e.g., Gavlik Constr. Co. v. H. F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir. 1975); *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 330 (4th Cir. 1971); *Valero Refin., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 66 (5th Cir. 1987); *Midwest Window Sys., Inc. v. Amcor Indus., Inc.*, 630 F.2d 535, 537 (7th Cir. 1980); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1120 n.4 (8th Cir. 2011); *Shinto Shipping Co. v. Fibrex & Shipping Co.*, 572 F.2d 1328, 1330 (9th Cir. 1978).

accordance with an "arbitration-specific rule derive[d] from a decades-old Second Circuit decision, which in turn grounded the rule in the FAA's policy." *Id*. at 417. That decision was *Carcich v. Rederi A/B Nordie*, 389 F.2d 692 (2d Cir. 1968).

The Supreme Court, however, disagreed with the Second and Eight Circuit's reasoning and, as a result, vacated the Eighth Circuit's decision and abrogated the line of cases derived from *Carcich*, holding that a court "may not make up a new procedural rule based on the FAA's 'policy favoring arbitration,'" such as "condition[ing] a waiver of the right to arbitrate on a showing of prejudice." *Morgan*, 596 U.S. at 418 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Rather, the Supreme Court endorsed the view that courts should apply the same rules applicable "[o]utside the arbitration context, [where] a federal court assessing waiver does not generally ask about prejudice." *Id*. at 417. A court's focus must be "on the actions of the person who held the right," and not "the effects of those actions on the opposing party." *Id*. at 418. When examining the "usual federal rule of waiver [it] does not include a prejudice requirement," meaning no such requirement is proper in the arbitration context. *Id*. at 419. Instead, the Supreme Court prescribed the following inquiry to determine whether a party waived its right to arbitration: Did that party "knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id*.

### III.    The Second Circuit's Application of *Morgan*

In the wake of *Morgan*, district courts within the Second Circuit began to diverge in their application of the Supreme Court's decision. Some district courts applied the "preexisting waiver analysis, specific to arbitration, but without taking into account prejudice." *See Boustead Secs., LLC v. Leaping Grp. Co.*, 656 F. Supp. 3d 447, 451 n.7 (S.D.N.Y. 2023). Other district courts evaluated arbitral waiver in the same way it would be applied "in the context of any other kind of

contract." *See Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 263 (E.D.N.Y. 2022). It was not until the *Doyle* decision that the Second Circuit clarified the application of the arbitral waiver standard post-*Morgan*. There, the Second Circuit determined that the "core inquiry is neither the length of the delay nor the amount of litigation that has occurred," but rather an analysis of whether "the moving party knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Doyle*, 144 F.4th at 130. To determine whether a party has acted inconsistently with its arbitral rights, courts "may consider all aspects of the moving party's conduct—including those factors that were significant under [the] pre-*Morgan* test—as long as [courts] do not do so through the lens of prejudice." *Id*. Those factors include "(1) the time elapsed from when litigation was commenced until the request for arbitration" and "(2) the amount of litigation to date, including motion practice and discovery." *Id*.

Since the Second Circuit's decision in *Doyle*, district courts have adhered to the standard set forth in *Morgan*. *See, e.g.*, *Park v. Shinhan Bank Am.*, 2025 WL 2710106, at *6 (S.D.N.Y. Sept. 23, 2025) ("To determine whether a party has waived arbitration, courts ask whether that party 'knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right.'"); *New Land Interiors Corp. v. Kinsale Ins. Co.*, 2025 WL 3560356, at *4 (S.D.N.Y. Dec. 12, 2025) (same); *Hyman v. Cummings-Ramone*, 2025 WL 2549981, at *7 (E.D.N.Y. Sept. 4, 2025) (same). This Court will accordingly adhere to the *Doyle* decision and apply the standard set forth in *Morgan*.

## IV.    Application of *Doyle* to Defendant Zehra

Guided by this precedent, the Court now addresses Plaintiffs' argument: whether Defendant's behavior is inconsistent with her arbitral rights because she filed five counterclaims that were not included in her arbitration statement. (Pls.' Mem. at 16.)

This dispute between the parties did not begin in federal court—it began when Defendant initiated an arbitration proceeding before the AAA on October 29, 2024. (Gedan Decl., Ex. 7.) At that time, Defendant raised only a single breach of contract claim. (*Id*. ¶¶ 4, 47–52.) Three months later, Plaintiffs initiated this action seeking a declaratory judgment that Defendant's employment agreement—and the arbitration provision contained therein—is void *ab initio*. (Gedan Decl., Ex. 1, ¶¶ 31–48.)  Following the commencement of Plaintiffs' lawsuit, Defendant filed an Answer asserting five counterclaims: (1) breach of contract; (2) promissory estoppel; (3) unjust enrichment; (4) *quantum meruit*; and (5) breach of the covenant of good faith and fair dealing. (*See generally* Gedan Decl., Ex. 2.)  Defendant argues that these counterclaims arose only because Plaintiffs brought this action seeking to invalidate the entire employment agreement at issue between the parties. (ECF No. 34, "Def. Opp.," at 2–3; ECF No. 40, "Def. Sur-Reply," at 2.) Defendant further argues that these counterclaims were compulsory in nature and would have been waived if not asserted in her Answer. (Def. Opp. at 8.)

After the Second Circuit's decision in *Doyle*, there have been few decisions grappling with the issues presented in this case. *Doyle* involved a defendant that sought arbitration only after the district court denied its motion to dismiss. 144 F.4th at 130. As the Second Circuit explained, "[a]t no point before that denial did the []Defendants file a motion to compel arbitration or otherwise alert the District Court—or Plaintiffs—that they planned to seek such relief." *Id*. That is not the case here, where Defendant initially commenced an arbitration proceeding to resolve this dispute before Plaintiffs filed this lawsuit. (Gedan Decl., Exs. 1, 7.)  Courts in this district applying *Doyle* likewise do not present the circumstances at issue in this action. *See, e.g.*, *Park*, 2025 WL 2710106, at *7 (finding waiver where defendants filed a motion to compel arbitration after filing a motion to dismiss and "waited for over a year before first indicating their intention to seek

arbitration"); *New Land Interiors Corp.*, 2025 WL 3560356, at *4 (filing a motion to compel arbitration only after the filing of the lawsuit).  Nor have courts in this district addressed whether a party's assertion of counterclaims in a pleading is inconsistent with its right to arbitrate after *Doyle*.

The Court thus looks to precedent outside of this circuit, where courts have addressed this issue post-*Morgan*.  For instance, the Sixth Circuit in *Schwebke v. United Wholesale Mortgage LLC* acknowledged that "[a] counterclaim, while adding a claim into existing litigation, affirmatively requests relief only in the broadest sense."  96 F.4th 971, 976 (6th Cir. 2024).  The Sixth Circuit further distinguished between permissive and compulsory counterclaims.  *Id*.  When a party files a permissive counterclaim, it is "willfully expanding the scope of litigation."  *Id*.  By contrast, when a party files a compulsory counterclaim, it is "required to respond to the litigation or waive the right to bring that claim."  *Id*.  Although the Sixth Circuit in *Schwebke* did not determine whether the assertion of a counterclaim waives a party's arbitral rights, other post-*Morgan* courts have.  *See, e.g.*, *Schram v. PMC Ins. Agency, Inc.*, 2022 WL 22908380, at *8 (D. Mass. Dec. 22, 2022) (holding that defendant did not waive arbitral rights when filing answer with counterclaims, including "breach of the Operating Agreement; violation of the duty of good faith and fair dealing; and breach of fiduciary duty with respect to the Operating Agreement"); *Ghouri v. AmSher Collection Servs. Inc.*, 2022 WL 11964565, at *6 (E.D. Va. Oct. 19, 2022) (the "filing of minimal responsive pleadings, such as an answer or compulsory counter-claim, are not necessarily inconsistent with an intent to pursue arbitration"); *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1187 (W.D. Wash. 2024) (the filing of "an answer with counterclaims (without litigating them) is not sufficiently inconsistent with the right to arbitrate").[2]

---

[2] Although pre-dating *Doyle* and *Morgan*, the Second Circuit has long recognized that "[m]erely answering on the merits [or] asserting a counterclaim… without more, will not necessarily constitute a waiver."  *Demsey & Assocs.,*

Relying on this precedent, the Court concludes that Defendant's filing of counterclaims—on its own—is insufficient to support a finding that she acted inconsistently with her right to arbitrate. As explained above, Defendant commenced arbitration before Plaintiffs initiated this action. (Gedan Decl., Exs. 1, 7.) Defendant's behavior is therefore distinguishable from the defendants in *Doyle*, who sought to compel arbitration only after the district court denied its motion to dismiss. 144 F.4th at 130. Defendant's behavior is also distinguishable from the respondent in *Morgan*, who sought to compel arbitration "nearly eight months after the suit's filing." 596 U.S. at 415. Nor does Defendant's behavior resemble the inconsistent actions of defendants in this district ruled on post-*Doyle*. *See Park*, 2025 WL 2710106, at *7 (seeking arbitration after filing a motion to dismiss); *New Land Interiors Corp.*, 2025 WL 3560356, at *4 (seeking arbitration after a lawsuit was filed). Moreover, Defendant's five compulsory counterclaims were filed solely in direct response to Plaintiffs' litigation seeking declaratory relief invalidating the employment agreement at issue. (Def. Opp. at 2–3; Def. Sur-Reply at 2.) In the event that this Court does invalidate the employment agreement, Defendant did not want to waive her rights seeking alternative relief—especially since the underlying arbitration is stayed pursuant to Plaintiffs' motion for Temporary Restraining Order and Preliminary Injunction. (ECF No. 19.)

Plaintiffs similarly argue that Defendant availed herself to this Court by filing a pre-motion conference letter seeking to dismiss the Complaint. (Pls.' Reply at 9; Gedan Reply Decl., Ex. 11.) However, Defendant withdrew her request to dismiss the Complaint and instead filed an Answer. (ECF Nos. 16, 21.) Plaintiffs also contend that Defendant acknowledged such availment when she sought leave to stay her counterclaims pending resolution of Plaintiffs' declaratory judgment claim. (Pls.' Reply at 9; Gedan Reply Decl., Ex. 14, at 1.) In that letter, Defendant explained that

*Inc. v. Steamship Sea Star*, 461 F.2d 1009, 1018 (2d Cir. 1972); *see also Century Indem. Co. v. Clearwater Ins. Co.*, 2007 WL 1599157, at *2 (S.D.N.Y. June 4, 2007) (same).

she "had no choice" but to assert her counterclaims "in the event of a judgment in Plaintiffs' favor that [Defendant's] claims must be heard in Court rather than in arbitration, leaving [Defendant] with no recourse whatsoever to remedy Plaintiffs' failure to pay [Defendant's] separation benefit." (Gedan Reply Decl., Ex. 14, at 1.)  Defendant further requested that discovery on her counterclaims be stayed to avoid "fully briefing and possibly conducting full discovery on claims that will ultimately head to arbitration for adjudication on the merits." (*Id*. at 2.)  Indeed, Defendant stated that her "position remains that this dispute, in its totality, is properly heard before an arbitrator." (*Id*. at 1.)  She has reiterated this position throughout her filings.  (*See, e.g.*, Def. Opp. at 1; Def. Sur-Reply at 2; Gedan Decl., Ex. 2.)

The Court cannot conclude that Defendant is attempting to use arbitration as a "fallback" or a "second bite of the apple." *Doyle*, 144 F.4th at 131.  Indeed, as explained in *Doyle*, "a party with a claim to arbitration faces a binary choice: litigation or arbitration." *Id*. (quoting *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 712 F.2d 270, 273 (7th Cir. 1983)).  Defendant has made that choice clear; she seeks to arbitrate this dispute.  Defendant wasted no time commencing the underlying arbitration, which began prior to this action, nor has she availed herself to this Court by filing compulsory counterclaims.  Viewed as a whole, Defendant's conduct was not inconsistent with her right to arbitrate.[3]

---

[3] Nor does the declaratory judgment exception apply here, as that doctrine operates as a shield to protect a defendant from being compelled to assert affirmative claims in response to a purely declaratory action, not as a basis for converting protective counterclaims into evidence of waiver of the right to arbitrate. (Pls.' Mem. 22–23.)  The Second Circuit has held that the declaratory judgment exception to the compulsory counterclaim rule applies only where a prior action involved solely a request for declaratory relief and no coercive claims. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 203 (2d Cir. 2010).  There is no such prior action; the only other proceeding is the underlying arbitration initiated by Defendant herself.  Plaintiffs' lawsuit also seeks coercive relief—specifically, to invalidate the employment agreement and preclude arbitration—and Defendant's counterclaims were asserted defensively to preserve her rights.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is DENIED. A Telephonic Pretrial Conference is scheduled for April 10, 2026, at 10:00 am. To access the teleconference, please follow these directions: (1) Dial the Meeting Number: (855) 244-8681; (2) Enter the Access Code: 2310 494 3855; and (3) Press pound (#) to enter the teleconference. The Court encourages the parties to engage in settlement discussions prior to the teleconference. The Court also respectfully directs the Clerk of Court to terminate the motion at ECF No. 26.

SO ORDERED.

Dated: February 4, 2026
      White Plains, NY

_____
Nelson S. Román, U.S.D.J.

14